# IN RE: MIRENA IUS LEVONORGES-TREL–RELATED PRODUCTS LIABILITY LITIGATION.

## MDL No. 2559.

United States Judicial Panel on Multidistrict Litigation.

Aug. 12, 2014.

Before JOHN G. HEYBURN II, Chairman, MARJORIE O. RENDELL, CHARLES R. BREYER, LEWIS A. KAPLAN, SARAH S. VANCE, and R. DAVID PROCTOR, Judges of the Panel.

### ORDER DENYING TRANSFER

JOHN G. HEYBURN II, Chairman.

**Before the Panel:** Pursuant to 28 U.S.C. § 1407, plaintiffs in all actions move to centralize this litigation in the Middle District of Tennessee or, alternatively, the Northern District of Alabama or the Western District of Kentucky. The litigation consists of nine actions pending in six districts, as listed on Schedule A.[1] Defendant Bayer HealthCare Pharmaceuticals, Inc. ("Bayer") opposes centralization and, in the alternative, requests the Southern District of New York.

Some characteristics of this litigation suggest that it would benefit in certain respects from centralization. The subject actions share factual issues arising from allegations that the synthetic hormone released by the Mirena IUD (levonorgestrel) causes abnormal elevation of cerebrospinal fluid in the skull, resulting in a neurological condition known as pseudotumor cere-

---

1. The Panel has been notified of six additional related actions.

bri or idiopathic intracranial hypertension, and that Bayer failed to warn consumers of this risk. Additionally, the Panel has centralized litigation concerning the Mirena IUD which focuses on another type of injury—uterine perforation and migration. *See In re: Mirena IUD Prods. Liab. Litig.*, 938 F.Supp.2d 1355 (J.P.M.L.2013).

Several factors in this new wave of actions, however, weigh against centralization. First, the nine actions before the Panel are filed by a single plaintiffs' counsel, and name the same defendant, which has national counsel coordinating its response to this litigation. Defendant represents that it stands ready and willing to share any overlapping discovery upon entry of an appropriate protective order (which already has been entered in two actions). Given the few involved counsel and limited number of actions, informal cooperation among the involved attorneys is both practicable and preferable to centralization. *See In re: Chilean Nitrate Products Liab. Litig.*, 787 F.Supp.2d 1347, 1347 (J.P.M.L.2011). The actions before the Panel are well-positioned for informal coordination, as they all are in their infancy with discovery having commenced in a handful of actions only in the last few months.

Although plaintiffs assert that the number of actions is likely to expand substantially, the mere possibility of additional actions does not convince us that centralization is warranted.[2] Moreover, the present record does not support plaintiffs' conclusory assertions. Since the filing of the motion, only six potential tag-along actions have been filed, most by the same counsel and/or counsel working in coordination with him.

Plaintiffs' reliance on the Panel's decision centralizing Mirena actions alleging uterine perforation and migration injuries in MDL No. 2434 is misplaced. The record before the Panel in that litigation involved a far greater number of actions—in addition to the eight actions on the motion, there were 40 related actions in 17 other districts filed by numerous different plaintiffs' counsel. *See* 938 F.Supp.2d at 1356. Effective voluntary coordination in that context was not feasible. *See id.* Additionally, unlike the uterine perforation and migration injuries at issue in MDL No. 2434, plaintiffs' alleged neurological symptoms—principally, headaches and vision problems—are nonspecific, which Bayer asserts will give rise to a fact-intensive inquiry over whether each plaintiff was properly diagnosed.[3]

On the basis of the papers filed and the hearing session held, we will deny plaintiffs' motion. Although the actions share factual questions arising out of allegations that Mirena's hormonal component causes intracranial hypertension and related injuries, we are unconvinced that Section 1407 centralization is necessary either to assure the convenience of the parties and witnesses or for the just and efficient conduct of this litigation. Given the limited number of involved counsel and actions, and the individualized causation disputes likely to predominate, alternatives to formal centralization appear to be preferable, particularly at this early stage of litigation. *See, e.g., In re: Fresh Dairy Prods. Antitrust*

---

**2.** *See In re: Intuitive Surgical, Inc., Da Vinci Robotic Surgical Sys. Prods. Liab. Litig.*, 883 F.Supp.2d 1339, 1340 (J.P.M.L.2012) (denying centralization, noting that "[w]hile proponents maintain that this litigation may encompass 'hundreds' of cases or 'over a thousand'

cases, we are presented with, at most, five actions.").

**3.** Plaintiffs also acknowledge that intracranial hypertension regularly is diagnosed in individuals who do not use Mirena, which will create further individualized causation issues.

*Litig.,* 856 F.Supp.2d 1344, 1345 (J.P.M.L. 2012).

IT IS THEREFORE ORDERED that the motion, pursuant to 28 U.S.C. § 1407, for centralization of these actions is denied.

## SCHEDULE A

MDL No. 2559 — **IN RE: MIRENA IUS LEVONORGESTREL–RELATED PRODUCTS LIABILITY LITIGATION**

*Northern District of Alabama*

HOUSTON v. BAYER HEALTHCARE PHARMACEUTICALS, INC., C.A. No. 2:14–00035

BRIDGES, ET AL. v. BAYER HEALTHCARE PHARMACEUTICALS, INC., C.A. No. 2:14–00036

*Northern District of Georgia*

THURMOND v. BAYER HEALTHCARE PHARMACEUTICALS, INC., C.A. No. 1:14–00822

*Western District of Kentucky*

SMITH v. BAYER HEALTHCARE PHARMACEUTICALS, INC., C.A. No. 3:14–00006

HARDWICK v. BAYER HEALTHCARE PHARMACEUTICALS, INC., C.A. No. 3:14–00082

BABICH–ZACHARIAS v. BAYER HEALTHCARE PHARMACEUTICALS, INC., C.A. No. 5:14–00101

*Eastern District of Tennessee*

CREASY v. BAYER HEALTHCARE PHARMACEUTICALS, INC., C.A. No. 3:14–00064

*Middle District of Tennessee*

COPLEY v. BAYER HEALTHCARE PHARMACEUTICALS, INC., C.A. No. 3:14–00406

*Western District of Virginia*

KELLINGTON v. BAYER HEALTHCARE PHARMACEUTICALS, INC., C.A. No. 5:14–00002

---

\* Judge Ellen Segal Huvelle took no part in the decision of this matter.